IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

EDNA HERNANDEZ MIRANDA,

    **Plaintiff,**

        **v.**                **CIVIL NO.** 06-2018 (FAB)

EMPRESAS DIAZ MASSO, INC., <u>et al.</u>,

    **Defendants.**

## OPINION & ORDER

BESOSA, District Judge

Pending before the Court is a renewed motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 ("Rule 50"), a motion for a new trial pursuant to Federal Rule of Civil Procedure 59(a) ("Rule 59(a)"), and a motion to amend the judgment pursuant to Federal Rule of Civil Procedure 50(e) ("Rule 50(e)") filed by defendant, Empresas Díaz-Massó, Inc. ("defendant" or "Díaz-Massó"). (Docket Nos. 143 & 153.) For the reasons discussed below, the Court **DENIES WITH PREJUDICE** defendant's motions pursuant to Rule 50 and Rule 59(a), (Docket No. 153), and **GRANTS** defendant's motion pursuant to Rule 59(e), (Docket No. 143).

## I. Background

On May 18, 2007, plaintiff, Edna Mildred Hernandez Miranda, ("plaintiff") filed an amended complaint against Díaz-Massó[1]

---

[1] The complaint originally named a number of individual defendants who were plaintiff's supervisors or co-workers at the time of her employment with Díaz-Massó. The claims against these individual defendants were dismissed prior to trial. (See Docket Nos. 66 &

alleging claims of sexual harassment pursuant to Title VII of the
Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-15 ("Title
VII").[2]  On August 18, 2008, after 5 days of trial, a jury found
for plaintiff and against defendant, awarding plaintiff $300,000.00
in damages.  (See Docket No. 138.)  The Court entered judgment on
August 18, 2008.  (Docket No. 139.)  On August 26, 2008, defendant
filed a motion requesting that the judgment be amended to reduce
damages based on the number of employees at Díaz-Massó.  (Docket
No. 143.)  On September 2, 2008, defendant filed a motion
requesting that the court overturn the jury's verdict and either:
(1) award defendant judgment as a matter of law; or (2) grant a new
trial.  (Docket No. 153.)  Defendant argues that: (1) plaintiff's
testimony regarding sexual harassment by two of defendant's
employees should not have considered by the jury because any claim
based on that harassment was time barred; (2) without the time-
barred evidence of sexual harassment, the evidence presented at
trial is insufficient to support the jury's verdict for plaintiff
against defendant; (3) based on the evidence presented at trial,
defendant is relieved of liability by the affirmative defense
established in Faragher v. City of Boca Raton, 52 U.S. 775 (1998);
(4) several of the Court's evidentiary rulings were sufficiently

_____

83)

[2] Plaintiff also alleged supplemental state law claims, but those
claims were held waived at trial.  (See Docket No. 151 at 9.)

prejudicial to defendant to merit a new trial; and (5) that plaintiff's counsel engaged in various types of misconduct during opening statements and closing arguments.  (Docket No. 153.) Plaintiff filed a response in opposition to both motions on September 17, 2008.  (Docket Nos. 158 & 159.)

**Factual Background**

The following is a brief description of the evidence presented at trial.  Further facts will be discussed as they become relevant in the analysis.

Plaintiff began to work at Díaz-Massó on August 25, 2003. She worked initially as a laborer, but eventually received training provided by Díaz-Massó and became a Safety Officer on various labor sites.  As a Safety Officer, it was plaintiff's duty to ensure that Díaz-Massó's employees complied with various safety regulations and procedures.  While performing these duties, plaintiff consistently experienced negative comments from laborers at constructions sites, including the repeated expression "[t]ell Pancho[3] to suck my dick."

Plaintiff's first supervisor at Díaz-Massó was Mr. Joseph Soto.  Plaintiff was assigned to Díaz-Massó's Project at Abbott in February of 2004.  At Abbott, Plaintiff was supervised by Mr. Javier Mendez.  Alexis Lugo ("Lugo"), a mechanical superintendent with Díaz-Massó, visited the Abbott project, frequently made sexual

---

[3] Pancho is the nickname of one of the founders of Díaz-Massó, Francisco Díaz-Massó.

comments to plaintiff, and on one occasion forced plaintiff to place her hand on his penis and told her, "[l]ook how you turn me on." (Docket No. 133 at 9.) At the end of her assignment at the Abbott project, Mike Hernandez ("Hernandez"), a project manager, solicited and received oral sex from plaintiff.

In September of 2004, plaintiff was transferred to Díaz-Massó's new project at Schering Plough at Manati, Puerto Rico. At the Schering Plough project, Plaintiff was supervised, among others, by Mr. Rafael Gonzalez Cintron. As part of Plaintiff's duties, she was responsible for handling and obtaining the required safety permits. The employees were required to have the permits before some duties were performed. While working at the Schering Plough project, the project superintendent at the site, Rafael Lopez ("Lopez") made several comments and propositions of a sexual nature to plaintiff. Also at the Schering Plough project, Hernandez again solicited and received oral sex from plaintiff.

On March 10, 2005, plaintiff was terminated from her employment with Díaz-Massó as a result of a conflict between herself and a representative of a client of Díaz-Massó, Marcos Gonzalez.

## II.  Defendant's Motion for Judgment as a Matter of Law

### A. Rule 50 Standard

A court may grant judgment as a matter of law pursuant to Rule 50 "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed.R.Civ.P. 50(a)(1).  When a party files a motion under Rule 50, that "motion must specify the judgment sought and the law and facts that entitle the movant to the judgment."  "[T]he court should review all of the evidence in the record.  In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. at 150-52 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  Evidence supporting a verdict may be entirely circumstantial and it need not exclude every hypothesis contrary to the verdict; "that is, the fact-finder may decide among reasonable interpretations of the evidence." Id.  A court may only grant judgment as a matter of law when "the evidence, together with all reasonable inferences in favor of the verdict, could lead a reasonable person to only one conclusion, namely that the moving

party was entitled to judgment." <u>Marrero v. Goya of P. R., Inc.</u>, 304 F.3d 7, 22 (1st Cir. 2002) (quoting <u>Lama v. Borras</u>, 16 F.3d 473, 477 (1st Cir. 1994)).

## B. EEOC Time Limitations

Defendant argues that the evidence regarding sexual harassment by Lugo and Hernandez should not have been presented to the jury because any claim based on that harassment is time-barred. (Docket No. 153 at .)    "Title VII requires an employee to file an administrative charge as a prerequisite to commencing a civil action for employment discrimination" in order to "provide the employer with prompt notice of the claim and to create an opportunity for early conciliation." <u>Fantini v. Salem State College</u>, 557 F.3d 22, 26 (1st Cir. 2009) (citing 42 U.S.C. § 2000e-5(f); <u>Powers v. Grinnell Corp.</u>, 915 F.2d 34, 37 (1st Cir. 1990)). "[A Title VII] plaintiff must file a charge with the EEOC 'within one hundred and eighty days after the alleged unlawful employment practice occurred." <u>Marrero v. Goya of P. R., Inc.</u>, 304 F.3d 7, 16 (1st Cir. 2002) (citing 42 U.S.C. § 2000e-5(e)).   "In a 'deferral jurisdiction' such as Puerto Rico, [however], that period is extended to 300 days." <u>Id.</u> at 17.   Díaz-Massó argues that any of the evidence of sexual harassment prior to this statutory limitations period presented at trial cannot serve as a basis for the liability assigned to it by the jury.

Defendant's argument that the contested evidence of sexual harassment is time-barred is inapposite to the procedural circumstances of this case.  The evidence presented by plaintiff relates to actions that appear to have occurred well within the 300 day period stretching back from the filing of plaintiff's EEOC charge.  Plaintiff filed her original EEOC charge on May 18, 2005. Based on the date of that filing, any actionable behavior would have to have occurred no earlier than July 22, 2004.  Plaintiff testified that Hernandez sexually harassed her at the site of the Schering Plough Project, which began in September of 2004. Although she also testified that Lugo sexually harassed her at the Abbott Project, which began in February of 2004, she further stated that his harassment began "after [she] had been at the Abbott project for a while" and culminated at the time that her work group was moving to the Schering Plough Project.  Defendant has pointed to no evidence that this sexual harassment occurred earlier than July 22, 2004.

Defendant's argument relies heavily on plaintiff's omission of the allegations against Hernandez and Lugo in her original EEOC charge.  Defendant specifically claims that because these incidents were not included in the original EEOC charge, they cannot form part of plaintiff's hostile work environment claim in this case. The First Circuit Court of Appeals has repeatedly stated that:

> [a]n administrative charge is not a blueprint for the litigation to follow.  See EEOC v. General Electric Co.,

>     532 F.2d 359, 364 (4th Cir. 1976) (quoting EEOC v. Huttig
>     Sash & Door Co., 511 F.2d 453, 455 (5th Cir. 1975)) ("The
>     charge is not to be treated as a common-law pleading that
>     strictly cabins the investigation that results therefrom,
>     or the reasonable cause determination that may be rested
>     on that investigation.  The charge merely provides the
>     EEOC with a 'jurisdictional springboard to investigate
>     whether the employer is engaged in any discriminatory
>     practices [sic]").  See also Graniteville Co. v. EEOC,
>     438 F.2d 32, 38 (4th Cir. 1971) (purpose of charge is to
>     initiate EEOC investigation, "not to state sufficient
>     facts to make out a prima facie case"); Sanchez, 431 F.2d
>     at 465 ("[T]he purpose of a charge of discrimination is
>     to trigger the investigatory and conciliatory procedures
>     of the EEOC.").  Thus, "the exact wording of the charge
>     of discrimination need not 'presage with literary
>     exactitude the judicial pleadings which may follow.'"
>     Tipler v. E.I. duPont de Nemours & Co., 443 F.2d 125, 131
>     (6th Cir. 1971) (quoting Sanchez, 431 F.2d at 466).
>     Rather, the critical question is whether the claims set
>     forth in the civil complaint come within the "scope of
>     the EEOC investigation which can reasonably be expected
>     to grow out of the charge of discrimination." Sanchez,
>     431 F.2d at 466; Babrocky, 773 F.2d at 863; Miller, 755
>     F.2d at 23-24; Less, 705 F. Supp. at 112.

Fantini, 557 F.3d at 27 (quoting Powers v. Grinnell Corp., 915 F.2d

34, 38-39 (1st Cir. 1990)).

     Plaintiff's original EEOC charge alleged that she suffered a

hostile work environment, specifically addressing incidences of

sexual harassment by one Díaz-Massó employee, Rafael Lopez.

"Hostile environment claims are different in kind from discrete

acts.  Their very nature involves repeated conduct." National R.R.

Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002) (citing 1 B.

Lindemann & P. Grossman, Employment Discrimination Law, 348-49 (3d

ed. 1996)).  Those claims address a series of incidents of sexual

harassment that happen with such frequency and severity that they

collectively form a tangible employment action for the purposes of a Title VII discrimination claim. See id. Consideration of the merits of such a claim necessarily involves "looking at all the circumstances." Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993). Given the nature and legal background of hostile work environment claims, it is reasonable to expect that other acts of sexual harassment against plaintiff by employees of the same company be within the scope of the EEOC investigation of sexual harassment described in plaintiff's administrative charge.

Furthermore, plaintiff later amended her original EEOC charge to include allegations against Hernandez and Lugo. Defendant argues that this amendment does not cure the defect of omitting allegations regarding sexual harassment by Hernandez and Lugo, citing to Title 29, Code of Federal Regulations, Section 1601.12(b), which states that "[a] charge may be amended to . . . amplify allegations made therein. Such amendments . . . alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." (Docket No. 162 at 7-8.) Defendant claims that the additional allegations in the amendment do not "grow out" or relate to those in plaintiff's original administrative charge, but rather constitute a new, separate charge. Id. Much like the original EEOC charge, the amended allegations involve harassment against

plaintiff perpetrated by Díaz-Massó employees motivated by sexual discriminatory animus. Given the similarity of the discrimination claims in both the original charge and the amendment, the new allegations can be fairly said to grow out of those initially described by plaintiff on May 18, 2005.

Thus, it appears that either the original EEOC charge or the amendment to that charge filed by plaintiff provide a sufficient basis to introduce the evidence of sexual harassment by Hernandez and Lugo. Accordingly, the Court finds that the evidence was properly presented at trial; it shall be included in the following Rule 50 and Rule 59 analysis of the jury's verdict and the trial proceedings.

### C. Relevant Arguments in Light of the Jury's Verdict

Much of defendant's Rule 50 motion is geared toward challenging a finding that plaintiff's termination from employment at Díaz-Massó was discriminatory. (See Docket No. 153 at 15-20.) The verdict delivered by the jury, however, did not award damages based on any such claim. (See Docket No. 138.) As is apparent from the verdict form completed by the jury, the sole basis for the damages awarded to plaintiff was a hostile work environment claim resulting from sexual harassment. See id. Accordingly, the Court considers only defendant's arguments contesting the evidentiary basis for plaintiff's hostile work environment claim.

Defendant essentially makes three arguments regarding plaintiff's hostile work environment claim: (1) there was insufficient evidence of unwelcome harassment based on membership in a protected class; (2) there was insufficient evidence of severe and pervasive harassment that was both objectively and subjectively hostile; and (3) defendant was entitled to the Faragher/Ellerth affirmative defense based on the evidence presented at trial. For the reasons described below, the Court **DENIES WITH PREJUDICE** defendant's motion for judgment as a matter of law pursuant to Rule 50.

## 1. Standard for a Hostile Work Environment Claim

The protection against discrimination in employment provided by Title VII has been expanded to areas beyond strictly "economic" and "tangible discrimination" to situations where "sexual harassment [is] so 'severe or pervasive' as to 'alter the condition [of the victim's] employment and create an abusive working environment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)); Collazo v. Nicholson, 535 F.3d 41, 44-45 (1st Cir. 2008); Pomales v. Celulares Telefonica, Inc., 447 F.3d 79, 83 (1st Cir. 2006); Valentín-Almeyda v. Municipality of Aguadilla, 447 F.3d 85, 94 (1st Cir. 2006); Noviello v. City of Boston, 398 F.3d 76, 92 (1st Cir. 2005). An abusive work environment is created "'when the workplace is permeated with discriminatory intimidation, ridicule,

and insult, that is sufficient severe or pervasive to alter the conditions of the victim's employment.'" <u>Acevedo Vargas v. Colón</u>, 68 F.Supp.2d 80, 92 (D.P.R. 1999) (quoting <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 20 (1993)).

To sustain a hostile work environment claim, a plaintiff must prove: "(1) that she . . . is a member of a protected class; (2) that she was subjected to unwelcome . . . harassment; (3) that the harassment was based upon [membership in the protected class]; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that [the] objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) some basis for employer liability has been established." <u>O'Rourke v. City of Providence</u>, 235 F.3d 713, 728 (1st Cir. 2001) (<u>citing</u> <u>Faragher</u>, 524 U.S. at 787-89; <u>Harris</u>, 510 U.S. at 20-23; <u>Meritor</u>, 477 U .S. at 65-73). Hostile work environment claims generally center on the severity and pervasiveness of the objectionable conduct and whether that conduct was both objectively and subjectively offensive. <u>Id.</u>

In <u>Harris</u>, the Supreme Court noted that the test for proving a hostile work environment "is not, and by its nature cannot be, . . . mathematically precise " 510 U.S. At 22. To determine whether an environment is sufficiently "hostile" or "abusive," a court must

examine the totality of the circumstances including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 23. "'Simple teasing,' offhand comments, and isolated incidents (unless extremely serious)" do not create a hostile work environment. Faragher, 524 U.S. at 788 (quoting Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 82 (1998)).

**2. Summary of Plaintiff's Evidence of Sexual Harassment**

The Court begins its analysis of the sufficiency of the evidence supporting the jury's verdict by reviewing the evidence presented by plaintiff regarding sexual harassment at project sites run by Díaz-Massó. (Docket No. 153 at 16-17.) At trial, plaintiff testified that she was sexually harassed, that she complained both to her harassers and her supervisors regarding sexual harassment, and that no response was made by defendant to the sexual harassment. Plaintiff testified to the following incidents of sexual harassment:

1) Laborers at the Abbott Project responded to her comments about safety regulations by telling her to go to hell and saying, "Tell Pancho to suck my dick." (Docket No. 132 at 78.) This occurred "many, many times." Id. at 79. Plaintiff complained about this behavior to supervisors Javier Mendez and Hernandez.

Id. Javier Mendez told her to go to hell when she complained. Id. at 80.

2) At the Abbott project, Lugo and those employees working in his assigned work group referred to plaintiff as "Sonya." (Docket No. 133 at 8.) When plaintiff inquired as to the reason for this nickname, Lugo responded that plaintiff, "had it first frontwards and backwards," which she understood to mean that "he wanted to say that [she] had huge tits." Id. at 9.

3) Inside Hernandez's office at the Abbott Project, Lugo approached plaintiff, grabbed her hand, placed it on his penis, and stated, "[l]ook how you turn me on." (Docket No. 133 at 9.) Plaintiff then pushed him away and told Lugo that she was going to report his conduct. Id. Lugo replied that the company would believe him rather than plaintiff. Id. Plaintiff then told Lugo to leave her alone, after which he left. Id. at 9-10. Plaintiff complained to Hernandez, the Project Manager at the Abbott Project, stating that if Lugo acted in that manner again, she would slap him. Id. at 10. Hernandez never responded to the complaint.

4) While moving from the Abbott Project to the Schering Plough Project, Hernandez and plaintiff were alone at in an office at the Abbott Project when Hernandez told plaintiff that "he was horny – and since he was [plaintiff's] boss, [plaintiff] had to do whatever he said, because otherwise, he would kick [her] out or send her to [an undesirable project] – and that [plaintiff] had to suck him

off." (Docket No. 133 at 13.) Hernandez then held plaintiff's head near his genitals until she performed the oral sex he requested. Id. at 14.

5) Lopez, the Project Superintendent at the Schering Plough Project, told plaintiff that she "had a nice mouth [and] that [she] had huge tits." (Docket No. 133 at 16.) Lopez invited plaintiff to accompany him to a motel "because he said that [plaintiff] was a lonely woman, and that they had a love machine there, and that he would make [plaintiff] have fun." Id. When plaintiff was present at the site on "field runs," Lopez would tell other male employees "that [plaintiff's] pussy was large on top and slim on the bottom [and] that it was great for him sticking it inside [plaintiff]." Id. Plaintiff was forced to walk away and seek refuge in the office of a colleague. Id. at 17. Plaintiff complained to Hernandez and Rafael Gonzalez, another supervisor, about Lopez's behavior. Id. at 16. Hernandez told plaintiff that he had too much work to respond to plaintiff's complaints. Id.

6) Lopez called plaintiff over to the office at the Schering Plough Project. (Docket No. 133 at 18.) When she arrived, Lopez told her to "come over here so [he] could make [plaintiff] have fun." Id. Lopez would "constantly bite his lips and look [at] [plaintiff] from top to bottom talking about [her] tits, about [her] butt, [and] inviting [plaintiff] to go out." Id. at 19.

7) On one occasion, plaintiff entered a work site to find that the male employees had built two penises out of pipe glue.  (Docket No. 133 at 19.)

8) On one occasion, Hernandez and plaintiff were alone at the Schering Plough Project.  (Docket No. 133 at 27.)  Hernandez once again asked plaintiff to perform oral sex on him "[b]ecause he was [plaintiff's] boss and would always threaten to kick [plaintiff] out or change [her] projects." Id.  This was not the last occasion that Hernandez solicited oral sex from plaintiff.  Id. at 28.

9) Plaintiff complained to Francisco Díaz-Massó regarding sexual comments and he did not respond to those complaints. (Docket No. 133 at 35.)  Plaintiff also called Francisco Díaz-Massó regarding safety issues at a work site and he did not respond to those issues.  Id.  After speaking to Francisco Díaz-Massó about the safety issues, Hernandez warned her never to call Francisco Díaz-Massó again.  Id.

### 3. Unwelcome Sexual Harassment on the Basis of Sex

Defendant first claims that there is insufficient evidence of unwelcome sexual harassment on the basis of sex to ground the jury's verdict.  (Docket No. 16-18.)   This argument, like the majority of defendant's arguments, hinges on its assertion that the evidence regarding sexual harassment by Hernandez and Lugo is time-barred.  Given that the Court has ruled that that evidence is not time-barred, defendant's arguments are substantially weakened.

When the evidence listed above is considered, there is abundant evidence of harassment, including forced sexual activity, comments of a sexual nature, and explicit proposals of sexual activity.   There is likewise plentiful evidence that such harassment was unwelcome.  Some of the sexual activity was coerced; plaintiff told Lopez that his sexual comments and proposals were unwelcome; plaintiff warned Lugo that she would slap him if he tried to engage her in sexual activity again; and plaintiff complained to several supervisors at project sites regarding the incidents of harassment.   Furthermore, the involvement and description of sexual activity and references to female genitalia and body parts leaves little doubt that the harassment was motivated by plaintiff's membership in a protected class, i.e., her female gender or sex.   Accordingly, the Court finds sufficient evidence to support the jury's determination that there was unwelcome harassment based on plaintiff's sex.

## 4. Severity, Pervasiveness, and Subjective/Objective Hostility

Defendant claims that a reasonable jury could not have found that the sexual harassment complained of by plaintiff was severe, pervasive, or subjectively and objectively hostile enough to constitute a hostile work environment.  (Docket No. 153 at 15-20.) As noted above, evaluating these elements of a hostile work environment claim involves considering "the frequency of the discriminatory conduct; its severity; whether it is physically

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." O'Rourke, 235 F.3d at 729 (citing Faragher, 524 U.S. at 787-88).

Plaintiff's evidence established at least three instances of sexual harassment that were extremely severe, physically threatening, and humiliating, including Hernandez coercing her to perform oral sex on two occasions and Lugo forcing her hand to touch his penis. There was also evidence of frequent sexual harassment in the form of sexual comments from several Díaz-Massó employees, including Lopez's humiliating comments regarding her body and proposals of sexual activity. Furthermore, there is evidence that the sexual harassment affected her work performance as a Safety Officer; plaintiff testified that she had to walk away from "field runs" at the work site and take refuge in a colleague's office. The effect of this sexual harassment was confirmed by plaintiff's expert witness Dr. Rivera-Mass, testifying as to the psychological toll of the harassment on plaintiff. (See, e.g., Docket No. 131 at 52-54.) Given this evidentiary basis, a reasonable jury could have found that the sexual harassment described in plaintiff's testimony was severe, pervasive, and objectively and subjectively hostile.

### 5. Affirmative Defense under <u>Faragher/Ellerth</u>

Defendant argues that the evidence presented at trial entitles it to the affirmative defense established in <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775 (1998), and <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742 (1998). "Where no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages." <u>Valentin-Almeyda v. Municipality of Aguadilla</u>, 447 F.3d 85, 95 (1st Cir. 2006). In order to establish this defense, the employer must establish: "(a) that the employer exercised reasonable care to prevent and correct promptly any harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." <u>Id.</u>

Defendant claims that plaintiff acted unreasonably because she had Francisco Díaz-Massó's mobile telephone number and failed to call him  regarding any sexual harassment. Plaintiff testified, however, that she did discuss sexual comments with Francisco Díaz-Massó at some point. Even if this were not the case, however, plaintiff had previously called Francisco Díaz-Massó to discuss safety matters and was subsequently warned by her supervisor, Hernandez, never to call Francisco Díaz-Massó. Plaintiff testified that she did complain about sexual harassment to Hernandez, both before and after he coerced her to perform oral sex, and to other

supervisors on several occasions.  Furthermore, defendant provided no evidence of procedures in place at Díaz-Massó to deal with or respond to allegations of sexual harassment other than Francisco Díaz-Massó posting his mobile telephone number at project sites.

The jury was properly instructed as to the affirmative <u>Faragher</u>/<u>Ellerth</u> defense. (<u>See</u> Docket No. 137 at 19.)  The evidence presented at trial in the light most favorable to the verdict indicates that the only preventive/corrective mechanism in place to deal with harassment was the availability of Francisco Díaz-Massó's mobile phone number to employees.  Given that plaintiff was warned by her direct supervisor not to call Francisco Díaz-Massó, she complained to her several of her supervisors.  Despite her complaints, no action was taken.  Considering the evidentiary basis available, the Court finds that a reasonable jury could conclude that defendant was not entitled to its proffered affirmative defense.

## III. Defendant's motion for a new trial

### A. Rule 59(a) Standard

Defendants move pursuant to Rule 59(a) for a new trial.  The rule permits courts to grant a new trial on some or all of the issues "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed.R.Civ.P. 59(a)(1)(A).  Motions for new trial may be granted, for example, where verdicts are against the clear weight of the

evidence, and – a variation of the this – where verdicts are grossly excessive (relative to the evidence adduced at trial). See, e.g., Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 433-36 (1996); Rios v. Empresas Lineas Maritimas Argentinas, 575 F.2d 986, 990-91 (1st Cir. 1978). "A motion for a new trial is addressed to the sound discretion of the trial court[.]" Rios, 575 F.2d at 990. "A district court should order a new trial only when convinced that the clear weight of the evidence so requires, or that a miscarriage of justice would otherwise result." Consolo v. George, 58 F.3d 791, 795 (1st Cir. 1995) (quoting Veranda Beach Club Ltd. v. Western Sur. Co., 936 F.2d 1364, 1384 (1st Cir. 1991)).

   **B.   Evidentiary Rulings**[4]

   Defendant argues that several of the Court's evidentiary rulings provide a basis for a new trial. For the reasons described below, the Court **DENIES WITH PREJUDICE** defendant's motion for a new trial based on evidentiary rulings made at trial.

---

[4] Defendant briefly states that a new trial or remittitur should be granted, and includes a cursory list of reasons for granting this relief. (See Docket No. 153 at 21.) Defendant does not include any specific arguments as to why either of these remedies should, however, be granted. After reviewing the evidence presented at trial, it is not apparent that the clear weight of the evidence is against the verdict or that the damages awarded by the jury are manifestly unreasonable. Accordingly, the Court declines to address these matters with any particularity and proceeds to defendant's more specific arguments regarding the Court's evidentiary rulings and allegations of plaintiff's counsel's misconduct.

**1. Jury Instruction No. 13**

Defendant objects to the Court's jury instruction number 13, which states:

> An employer will be vicariously liable for workplace harassment perpetrated by supervisors, if the plaintiff experiences a tangible employment action (such as discharge, demotion, undesirable reassignment, requiring an employee to engage in an unwanted sex act, or a supervisor's explicit conditioning of a subordinate's continued employment or submission to sexual demands) whether or not she rejected the supervisor's sexual requests.

(Docket No. 153 at 21.)

Defendant argues that the instruction should not have referenced "requiring an employee to engage in an unwanted sex act, or a supervisor's explicit conditioning of a subordinate's continued employment or submission to sexual demands" because plaintiff's evidence regarding Hernandez and Lugo's sexual harassment is time-barred.  Having already addressed defendant's argument regarding EEOC time limitations and concluded that its argument is meritless, the Court need not repeat its analysis with regard to the inclusion of the challenged jury instruction. Accordingly, this jury instruction cannot serve as a basis to grant a new trial.

**2. The Court's Summary of the Parties' Respective Allegations**

Defendant argues that the Court's summary of the parties' allegations in this case given in the course of jury instructions mischaracterized defendants theory of the case in a sufficiently

prejudicial manner to merit a new trial.  Specifically, defendant
argues that the Court's summary gave the jury the impression that
defendant admitted plaintiff's factual allegations, denying only
that those allegations were insufficient to create a hostile work
environment.   (Docket No. 153 at 22-23.)   Any speculation of
prejudice is not due to the Court's statements to the jury; rather,
they are due to defendant's misinterpretation of those statements.

     The Court summarized plaintiff's claims to the jury and then
stated that defendant "denies those claims and contends that the
incidents that Ms. Hernandez Miranda alleges occurred are not
severe enough to support a claim for hostile work environment."
This statement makes clear that defendant denies plaintiff's claims
of sexual harassment and discrimination.  Given that the Court made
defendant's denial of plaintiff's claims and their argument
regarding plaintiff's **allegations** clear, defendant's fears
regarding prejudice resulting from the Court's summary of the
parties' allegations are unfounded.

### 3.  Testimony by Ms. Luz Lopez-Rivera

     Defendant challenges the introduction of testimony by Luz
Lopez-Rivera ("Lopez-Rivera").   Lopez-Rivera testified regarding
conversations she had with plaintiff regarding her employment with
Díaz-Massó and the effects of that employment.  Defendant attacks
this testimony by claiming that Lopez-Rivera lacks personal
knowledge sufficient to be a competent witness.  (Docket No. 153 at

34.)  Because its argument relies on the fact that Lopez-Rivera only heard plaintiff state things about her work conditions over the phone, the Court reads this as a hearsay challenge to Lopez-Rivera's testimony, which was the basis relied upon by defendant when objecting to this testimony at trial.

Hearsay is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed.R.Evid. 801(c).  "Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress."  Fed.R.Evid. 802.  If statements are "not offered to prove the truth of the matter asserted therein, they [are] not hearsay within the meaning of Rule 801(c)" and thus not prohibited by Rule 802.  See Keisling v. SER-Jobs for Progress, Inc., 19 F.3d 755, 762 (1st Cir. 1994).

The Court overruled defendant's objection on the grounds that the testimony was not being offered for the truth of the matter asserted, i.e., that plaintiff was, in fact, sexually harassed in the workplace, but rather for the limited purpose of establishing that plaintiff called Lopez-Rivera to complain about harassment. At sidebar, the Court further warned the defendant that the evidence could come in to prove damages.  The Court then further instructed the jury, "ladies and gentlemen, Ms. Lopez-Rivera may testify about things – about things that Ms. Hernandez has told her

as you – you heard her beginning of her testimony, now those – that
is not being offered for the truth of what she told her.  It is
only being offered to show what [plaintiff] told her, not
necessarily that what she told her was true.  Remember, at the
beginning of the case I told you I could give you a limiting
instruction?  So testimony by . . . Ms. Lopez Rivera about what
[plaintiff] has told her is not being offered for the truth of
those, and you will only consider it as something [plaintiff] told
her."  (Docket No. 133 at 110-11.)

Aside from the issue of damages, defendant had previously
brought up the issue of the consistency of plaintiff's complaints
over the course of the procedural history of this case,
specifically that her complaints had been changed and augmented
from the time of her original EEOC charge to the time of the
present litigation.  Considering this challenge to the uniformity
of plaintiff's complaints of sexual harassment, it would be
relevant to hear testimony of plaintiff making similar complaints
at an earlier time.

Even assuming that the testimony, *arguendo*, was hearsay,
defendant would have to show that it affected one of its
substantial rights.  <u>See</u> Fed.R.Evid. 103.  The only instance of
"undue prejudice" highlighted by defendant is that Lopez-Rivera's

testimony "confused the Jury about the issues of the case."[5]
(See Docket No. 153 at 35.) Defendant offers no further
illustration of the manner in which Lopez-Rivera's testimony
confused the jury regarding any of the relevant issues in the case.
See id. Given that Lopez-Rivera's testimony did not touch upon any
issue other than plaintiff's complaints to Lopez-Rivera, the
Court's limiting instruction as to the purpose of the testimony
prevented, or at least mitigated, any potential confusion of the
jury.  Accordingly, the admission of Rivera's testimony cannot
serve as a basis to grant a new trial.

### 4. Plaintiff's Expert's Reference to Factual Matters

Defendant takes issue with testimony by plaintiff's expert
witness, Dr. Rivera-Mass, regarding incidents related by plaintiff
to Dr. Rivera-Mass.  Defendant specifically argues that these
statements pertain to factual matters, rather than matters of her
expert opinion that would be helpful to the jury.  Defendant made
no timely objection to Dr. Rivera-Mass's statements which defendant
challenged in its motion for a new trial.  Thus, defendant is
entitled only to review for plain error.  See Fed.R.Evid. 103;
United States v. Vazquez-Botet, 532 F.3d 37, 54 (1st Cir. 2008).

---

[5] Regarding "undue prejudice," defendant also states that Lopez-
Rivera "lacked personal knowledge about the facts she testified,
[and] her testimony was irrelevant."  These are not really
arguments regarding prejudice to defendant's rights, but rather
arguments regarding the admissibility of the testimony inapposite
to the Court's analysis of prejudice to defendant's substantial
rights.

Defendant challenges the following two statements made by Dr. Rivera-Mass: (1) "[Díaz-Massó] employees were a little bit difficult to deal with because sometimes they would arrive sometimes drunk and sometimes intoxicated to the – to the area. She knew that also there was a lot of use of drugs and marijuana. . . ;" and (2) "[plaintiff] said that [Hernandez] grabbed her in the office by her arm and pushed her against the desk.  And – and he start – he kissed her on the face . . . ;" and (3) "[s]he said this now she – she thinks and understands – she didn't say anything about this to anybody because of this concern and now she realized probably she should have because she was going to get fired anyway."  (Docket No. 131 at 46, 50, 78.)  Defendant claims that these statements were inadmissible and "highly prejudicial," but declines to give any further explanation.[6]

Dr. Rivera-Mass's statements appear in the context of her summary of the events related to her by plaintiff for the purposes of rendering her expert report.   Although Dr. Rivera-Mass did relate statements of an out-of-court declarant to the jury, those statements were not hearsay because there is no indication that

---

[6] Defendant refers to Federal Rule of Evidence 703, stating that "[f]acts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the Court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect."  This quotation alone, however, only begs the question as to why the challenged statements were inadmissible.  Defendant supplies no answer.

those statements were introduced for the purpose of proving their truth.  See  Keisling, 19 F.3d at 762.  Dr. Rivera-Mass did not make any statements purporting to relate her personal knowledge of the events related to her by plaintiff, but rather disclosed her statements in order to ground her expert opinion on the information provided to her during her evaluation of plaintiff.  Without further grounds to challenge the admissibility of Dr. Rivera-Mass's statements, the Court finds no error to justify granting a new trial.

### 5. Alleged Misconduct by Plaintiff's Counsel

Defendant argues that several instances of misconduct by plaintiff's counsel at trial caused sufficient prejudice to merit a new trial.  (Docket No. 153 at 25-33.)  "In assessing the effect of improper conduct by counsel, [a court] must examine the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case, and the verdict itself."  P. R. Aqueduct & Sewer Auth. v. Constructora Lluch, Inc., 169 F.3d 68, 82 (1st Cir. 1999).  Defendant refers to prejudicial instances in both plaintiff's opening statement and closing argument, which the Court will address separately.  For the reasons described below, the Court **DENIES WITH PREJUDICE** defendant's motion for a new trial based on any alleged misconduct by plaintiff's counsel.

### 1. Opening Statement

Defendant alleges several incidents of improper conduct in plaintiff's opening statement.  The Court will take each in turn.

### a. Plaintiff's Counsel's statements regarding Plaintiff's Subsequent Employment

Defendant argues that plaintiff's counsel improperly stated that defendant was responsible for plaintiff's termination from the employment she had subsequent to her termination from Díaz-Massó. (Docket No. 153 at 26.)  During plaintiff's opening statement, plaintiff's counsel stated:

> She's been deprived of peace of mind.  We have a version that after a year without any good employment doing what you call "chivos"-cleaning houses and so forth, found a new job with another construction company to do particular-the compensation that she was being paid at Díaz-Massó, the Defendant's counsel found out about it, took the Controller's deposition of her new job, and she was dismissed.  She was never called again.  So she has been penalized twice.  She was dismissed from Díaz-Massó, and then they went after her as a result of this case and had her not called again from her new employment while this case was pending.

(Docket No. 131 at 21.)

Defendant timely objected to these statements on the basis that they were new allegations which had not been previously disclosed in the proposed pretrial order.  Id. at 22.  The Court promptly called counsel for both parties to the bench and concluded that these allegations were indeed not included by plaintiff in the proposed pretrial order.  Id. at 22-23.  The Court then advised plaintiff's counsel that any further comments or evidence regarding

these allegations would not be allowed.  Id.  The Court then

granted a request from defendant's counsel for a curative

instruction to the jury.  Id. at 23.  The Court then instructed the

jury in the following manner:

> Ladies and Gentleman of the jury, remember I told you at
> the beginning that we had gotten together, the attorneys,
> and decided what facts were – were not in dispute and
> things like that.  Well, there were other things
> discussed as to what each parties' evidence would be and
> what they would present.  This matter that Mr. Lopez
> brought up just now about her not being able to get a new
> job because someone from Empresas Diaz-Masso did
> something to – you know, not to allow her to get this new
> job was not part of what is in this – the document that
> generally states what the Plaintiffs and the Defendants
> will demonstrate in court; so, therefore, it will not be
> allowed to be presented.  So I'm going to instruct you
> that what Mr. Lopez said in his opening statement about
> that, you disregard.[7]

Id. at 23-24.

Aside from the instruction given regarding these specific

statements, the jury was generally instructed by the Court at the

beginning and end of the trial that "statements and arguments of

the lawyers, objections of the lawyers, [and] testimony that I

---

[7] Defendant claims that the Court's instructions on this matter
were insufficient to cure the prejudice caused by plaintiff's
counsel's reference to plaintiff's employment subsequent to her
employment with Díaz-Massó.  (Docket No. 153 at 27.)  The First
Circuit Court of Appeals has repeatedly held that "'[a] basic
premise of our jury system is that the jury follows the court's
instructions.'"  S.E.C. v. Happ, 392 F.3d 12, 27 (1st Cir. 2004)
(quoting Refuse & Evironmental Sys., Inc. v. Indus. Servs. Of Am.,
Inc., 932 F.2d 7, 40 (1st Cir. 1991)).  The Court has no reason to
believe that the jury did not follow either its instructions in
this specific instance, or with regard to any other issue
throughout the course of the trial.

instruct you to disregard or that I have excluded" are not evidence and should not be considered in deciding the facts of the present case.  These comments regarding the circumstances of plaintiff's termination from subsequent employment, although irrelevant, occurred only once, after which the Court did not allow any further similar statements or supporting evidence.  Given the circumstances of the alleged misconduct and the Court's instructions to the jury, this instance of misconduct does not merit granting a new trial.

**b. Plaintiff's Counsel's Reference to the Sexual Misconduct of Hernandez and Lugo**[8]

Defendant argues that plaintiff engaged in improper conduct by referring to the sexual harassment of Lugo as rape.  Defendant claims that such a statement was highly inflammatory and unduly prejudiced defendant in the mind of the jury.  When viewed in context, however, it is apparent that the rape characterization is directed at the conduct of Hernandez, not Lugo.  Plaintiff's counsel's comment appears in the transcript as follows:

---

[8] Defendant claims again that any reference to either Lugo's or Hernandez's conduct "was time-barred and timely objected to."  It is unclear from the motion if defendant is referring to a timely objection specifically to the rape characterization or generally to the allegations of sexual harassment by Hernandez and Lugo.  The Court has already addressed defendant's objections to any reference of Lugo or Hernandez's conduct, holding that the allegations of sexual harassment against plaintiff by Lugo and Hernandez were not time-barred.  The transcript further reveals that defendant did not timely object specifically to the rape characterization on the grounds presented in this motion.  (See Docket No. 131 at 17.)

> There was a time which he saw her going into the project,
> so he went after her, and went into the trailer,
> allegedly to find tool and – by surprise – grabbed her
> hand and placed it on his erect penis and said, This is
> what you do to me.  This is how you make me feel.  So
> Hernandez was assaulting her – I mean, that is sexual
> battery.  It's rape.  This other guy Lugo did that
> incident.  Nothing more because – the guy didn't go as
> far as Hernandez go.

(Docket No. 131 at 17.)

As is apparent from the quoted language, plaintiff's counsel was comparing Hernandez's conduct, which he characterized as rape, to Lugo's conduct.  Although this might be a strong characterization of Hernandez's conduct, it is not manifestly improper or unfair.  "There is a critical difference between a lawyer who hits hard and a lawyer who hits below the belt." Muniz v. Rovira, 373 F.3d 1, 6 (2004).  As was observed later in the course of the trial, it was indeed plaintiff's testimony that Hernandez coerced her to perform oral sex on two occasions at construction sites run by Díaz-Massó.  (See Docket No. 133 at 27-28.)  Given that the challenged statement has been misinterpreted by defendant and some testimony presented at trial to support plaintiff's counsel's statement, the Court finds no misconduct in plaintiff's use of strong language in reference to Hernandez's conduct sufficient to warrant a new trial.

**c. Alleged Misstatement of the Law**

Defendant argues that plaintiff's counsel misstated the law by claiming that "the fact that you are working and people are telling you these kinds of comments of a sexual innuendo or sexual nature, that is, by itself, sufficient harassment, contrary to the Defendants' [sic] claim that that is not enough." (Docket No. 153 at 28; Docket No. 131 at 13.)  Without expressing opinion as to whether this is a clear misstatement of the law regarding the nature of a hostile work environment, the Court finds that any prejudice created by the alleged misstatement was not sufficient to merit a new trial in light of the Court's instructions to the jury and the nature of the alleged misstatement in relation to the body of evidence presented at trial.

The Court thoroughly and properly instructed the jury as to the nature of a hostile work environment claim and the legal standards to be used in evaluating plaintiff's claim. (See Docket No. 137 at 15-18.)  The Court also instructed the jury, at both the beginning and end of the trial, that it was their "duty to follow the law as I will state it to you." Id. at 2.  The Court placed more than adequate emphasis on the primacy of the legal instruction provided by the Court, stating "[r]egardless of any opinion that you may have as to what the law is or should be, it would be a violation of your sworn duty to base a verdict upon **any** view of the law other than the law as stated in these instructions . . . ."

Id. (emphasis added).   Furthermore, as noted in the Court's analysis of the sufficiency of the evidence, the jury's verdict did not necessarily turn on whether "sexual innuendo and sexual comments," on their own, constituted a hostile work environment. The evidence presented at trial provided examples of numerous other types of sexual harassment, including the conduct of Hernandez and Lugo, thus further mitigating any potential prejudice resulting from plaintiff's counsel's alleged misstatement of the law.   See S.E.C. v. Happ, 392 F.3d 12, 27-28 (1st Cir. 2004).

### 2. Closing Argument

Defendant alleges several incidences of improper conduct in plaintiff's closing argument.   The Court will take each in turn.

### a. Golden Rule Argument and Appeals to Sympathy

Defendant argues that plaintiff violated the prohibition against the "Golden Rule" argument, i.e., asking jurors to put themselves in the position of the plaintiff.   "This so-called Golden Rule argument has been universally condemned 'because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.'"   Forrestal v. Magendantz, 848 F.2d 303, 309 (1st Cir. 1988) (quoting Ivy v. Security Barge Lines, Inc., 585 F.2d 732, 741 (5th Cir. 1978), cert. denied, 446 U.S. 956 (1980)).   A court's instructions to the jury regarding impartiality in deciding facts

or awarding damages may, however, "nullif[y] the effect of the
Golden Rule argument."  See id. at 309-10.

In the present case the Court instructed the jury regarding
impartiality as follows:

> In deciding the facts of this case, you must not be
> swayed by bias or prejudice or favor as to any of the
> parties in this case.  Our system of law does not permit
> jurors to be governed by prejudice or by sympathy or by
> public opinion.  All parties to the case and the public
> expect you to consider all of the evidence in the case
> carefully and impartially, to follow the law as stated by
> the Court, and to reach a just verdict regardless of the
> consequences.

The Court further stressed that "[i]n the final analysis . . . it
is your own recollection and interpretation of the evidence that
controls in the case.  What the lawyers say is not binding upon
you."  These instructions to the jury regarding impartiality and
reliance solely on the evidence presented in the case are
sufficient to nullify the effect of any Golden Rule argument that
may have been included in plaintiff's closing argument.

Defendant also argues that plaintiff's counsel appealed to the
sympathy of the jury by apologizing to the jury for potentially
failing to convince them as to every point necessary to find in
favor of his client and stating, "May God blesses [sic] you in your
deliberations."  (Docket No. 153 at 32.)[9]  The Court's instructions

---

[9] Defendant also points to plaintiff's counsel stating, "[i]f I
would be Perry Mason, [he] could have him admit and confess in
court. I'm not Perry Mason."  (Docket No. 153 at 32.)  The appeal
to the jury's sympathy in plaintiff's counsel's confession that he
is not a fictional mid-twentieth century attorney is not apparent.

regarding bias and partiality apply with equal force against
deciding facts based on sympathy rather than the evidence presented
at trial.  Accordingly, the Court finds that its instructions to
the jury sufficiently mitigate any potential prejudice caused by
these statements.

**b. Alleged Non-Production of Witnesses**

Defendant claims that plaintiff's counsel engaged in improper
conduct by highlighting the fact that Lugo, who was a Díaz-Massó
employee at the same time as plaintiff, did not testify at trial.
The First Circuit Court of Appeals has stated that "[a]ttorneys may
not argue that the jury should draw an inference against an
opponent where the opponent does not present witnesses that are
available to both parties." United States v. Jimenez-Torres, 435
F.3d 3, 12 (1st Cir. 2006) (citing United States v. Johnson, 467
F.2d 804, 808 (1st Cir. 1972); United States v. Virgen-Moreno, 265
F.3d 276, 290 (5th Cir. 2001); (United States v. Simpson, 974 F.2d
845, 848 (7th Cir. 1992)).[10]  Defendant points to no specific
negative inference plaintiff's counsel sought the jury to draw, nor

---

Even if such an appeal is hidden in this statement, the Court finds
that its instructions to the jury mitigate any resulting prejudice
to the defendant.

[10] This standard has primarily been applied in criminal cases in the
First Circuit Court of Appeals, but at least some courts have
applied it to the civil context. See, e.g. Hrichak v. Pion, 522 F.
Supp. 2d 283, 290 (D.Me. 2007).

any specific prejudice resulting from plaintiff's statements.  (<u>See</u>
Docket No. 153 at 30-31.)

In the two examples cited by defendant, plaintiff's counsel
briefly references the fact that Lugo did not testify during the
course of the trial.  <u>See</u> <u>id.</u>; (Docket No. 151 at 22, 32.)   No
additional argument follows asking the jury to make a negative
inference toward the defendant.  (<u>See</u> Docket No. 151 at 22, 32.)
Examining the context of these two examples, plaintiff's counsel
proceeds directly to address plaintiff's testimony regarding Lugo.
<u>See</u> <u>id.</u>  After the second incident, plaintiff's counsel notes that
"we don't know Lugo's version of the events."  (Docket No. 151 at
32.)  Thus it appears that instead of asking the jury to draw a
negative inference against defendant, plaintiff's counsel was only
highlighting that plaintiff's testimony was the only evidence
presented at trial regarding the events that occurred between
herself and Lugo.

Even if plaintiff's counsel's statements could be construed as
an argument that the jury draw a negative inference against
defendant, the Court clearly instructed the jury on two occasions
that statements, arguments, or objections of attorneys were not to
be considered as evidence in the case.  Considering defendant's
failure to identify a specific negative inference or a specific
prejudice resulting from plaintiff's counsel's statements, those
statements do not provide a basis to support granting a new trial.

**c. Misstatements of Law or Fact and References to Matters not in Evidence**

Defendant argues that plaintiff's counsel engaged in improper conduct sufficient to merit a new trial by referring to matters not admitted into evidence. (Docket No. 153 at 31.) Defendant claims that "[p]laintiff's attorney pointed out that Mr. Javier Mendez [an employee of Díaz-Massó] was not part of [the Díaz-Massó] family, because they fired him" and "misstated the facts when he told the jury that [plaintiff] was the only female employee." (Docket No. 153 at 31.) Defendant does not explain why these alleged misstatements are key issues to plaintiff's hostile work environment claim such that their inclusion in plaintiff's closing argument merits a new trial. See id. Furthermore, as noted above, the Court sufficiently instructed the jury as to the nature of evidence, including warning the jury that "any statements, objections, or arguments made by the lawyers are not evidence in the case." (Docket No. 137 at 4.) Considering the instructions given to the jury and the lack of any identified prejudice, these statements do not form a sufficient basis to grant a new trial.

Defendant also argues that plaintiff's counsel made several misstatements of law regarding an employer's liability in the context of a Title VII hostile work environment claim. (Docket No. 153 at 31-32.) Defendant lists several statements made in plaintiff's closing argument, but makes no attempt to explain how

those statements misstate the law or how they specifically prejudice defendant.  See id.  Even assuming, arguendo, that there were misstatements of law regarding the defendant's liability, the Court was sufficiently clear in its instructions to the jury to mitigate any potential prejudice.  As noted above, the Court informed the jury of its duty to follow the law only as the Court instructed.  (See Docket No. 137 at 2.)  The Court also gave detailed substantive instructions as to an employer's liability in a Title VII hostile work environment claim.  Id. at 19.  Given the Court's clear instructions and defendant's failure to identify any specific prejudice caused by the alleged misstatements, plaintiff's counsel's statements do not necessitate granting a new trial.

### d. Plaintiff's Counsel's Personal Opinions

Defendant argues that plaintiff's attorney improperly expressed his personal beliefs during plaintiff's closing argument on three occasions.  (Docket No. 153 at 33.)  Defendant made timely objections to only two of these three allegedly improper actions.  First, defendant contests, but made no timely objection to, plaintiff's counsel's statements that "[Hernandez] is not a decent human person, nor a good husband," and, "someone that goes around harassing his employees taking advantage of a female for his own pleasure is not a gentleman, he's not a good husband and he's not a good person."  (Docket No. 153 at 41.)

It is not clear, however, that these statements are plaintiff's counsel's personal opinion regarding Hernandez.  During direct examination of both Francisco Díaz-Massó and Juan Cruhigger, defendant's counsel asked the witnesses about their opinion of Hernandez and his reputation.   (Docket No. 134 at 31-32, 111.) Both witnesses responded that Hernandez had a positive reputation, and Francisco Díaz-Massó specifically stated that he had never received a complaint about Hernandez.   Id.  Given this testimony elicited by defendant's counsel, it is more likely that plaintiff's counsel was using plaintiff's testimony to argue against defendant's attempts to build up Hernandez's reputation.

Defendant next claims that plaintiff's counsel improperly expressed his personal beliefs by stating "I believe that the incident with Lugo happened. I believe that the incident of Hernandez happened. I believe that the incident of Lopez happened." (Docket No. 151 at 33.) Defendant would be correct if it had not quoted this language out of context.   The comments listed by defendant were preceded by "you could say . . . ," thus placing the words that follow in the jury's mouth, not that of plaintiff's counsel.   In case there was any confusion, however, the Court promptly stated, "It's not a question of whether – whether [plaintiff's counsel] believes.   It's what the jury believes." (Docket No. 151 at 33.)

Lastly, defendant argues that plaintiff's counsel improperly stated, "I don't see any difference between a rape and oral sex when it is not consented." (Docket No. 151 at 20.)  This statement prefaced what appears in the transcript to be an argument regarding the definition of rape in various jurisdictions.  Id. at 20-21.  The scope or intent of this argument is not clear, however, because the Court promptly responded to a timely objection made by defendant's counsel stating, "[s]tick to the facts.  Don't make any further arguments other than what are in the instructions and the facts of this case."  Id. at 21.  Plaintiff's counsel responded that he would not "refer to any foreign law," at which point the Court clearly stated, "I don't want you to refer to any other criminal statutes either."  Id.  Given the context of the statement, it is not entirely clear that plaintiff's counsel's statement was an expression of personal belief, or an introduction into a discussion of irrelevant law.  In either case, the Court took prompt action to stop plaintiff's counsel and prevent any such argument from moving further.

All three occasions highlighted by defendant in their motion were provided out of the context of the record.  When placed in that context, their impropriety as expressions of personal belief are questionable.  Even if any of the statements could be interpreted as improper, the Court took prompt action where necessary to stop any inappropriate argument and clear any

confusion that may have resulted.[11]  Furthermore, the Court gave
clear instructions at both the commencement and conclusion of trial
that counsels' arguments were not to be considered evidence in
determining the facts of the case.   (Docket No. 137 at 4.)
Considering the nature of the statements, the Court's prompt
action, and the general instructions regarding evidence given to
the jury, defendant's allegations of improper statement of personal
belief do not provide a basis for granting a new trial.

## IV. Defendant's motion to alter or amend judgment

Rule 59(e) governs a court's discretion to alter or amend a
judgment.   "Rule 59(e) allows a party to direct the district
court's attention to newly discovered material evidence or a
manifest error of law or fact and enables the court to correct its
own errors and thus avoid unnecessary appellate procedures." Aybar
v. Crispin-Reyes, 118 F.3d 10, 16 (1st Cir. 1997) (citations
omitted).  Those "motions are aimed at reconsideration, not initial
consideration.   Thus, parties should not use them to raise
arguments which could, and should, have been made before judgment
issued."  Jorge Rivera Surillo & Co. v. Falconer Glass Indus.,
Inc., 37 F.3d 25, 29 (1st Cir. 1994) (quoting F.D.I.C. v. World
Univ., Inc., 978 F.2d 10, 16 (1st Cir. 1992)).

---

[11] Although the Court did not give any instruction after the
plaintiff's counsel's comments regarding Hernandez, the Court was
not alerted to any impropriety by a timely objection from defendant
and, as noted, the comments were not clearly improper.

**A. Statutory Cap on Damages**

Defendant argues that the amount of damages assigned by the jury's verdict exceeds the statutory limitations on damages available in Title VII actions.   (Docket No. 143.)   Title 42, United States Code, Section 1981a set limits on the  amount and types of damages available in certain actions, including claims of discrimination pursuant to Title VII.   See 42 U.S.C. § 1981a. Section 1981a(b)(3) states that:

> The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party--
>
> (A) in the case of a respondent who has more than 14 or fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000;
>
> (B) in the case of a respondent who has more than 100 or fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $100,000; and
>
> (C) in the case of a respondent who has more than 200 or fewer than 501 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $200,000; and
>
> (D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

42 U.S.C. § 1981a(b)(3).

On August 18, 2008, the jury awarded plaintiff damages in the amount of $300,000 "to compensate for past, present and future emotional pain and mental anguish caused by defendant Empresas

Diaz-Masso's conduct, actions or omissions." (Docket No. 138.)
Defendant argues that the damages award should be capped at $50,000
because it only had 25 employees  during the calendar year of the
judgment (2008) and 98 employees during the calendar year preceding
the judgment (2007). (See Docket No. 143-2.)

Plaintiff first responds that defendant should have raised
this issue before the jury.[12] (Docket No. 158 at 2.) Plaintiff's
argument fails, however, because Section 1981(c) provides that the
statutory limitations on damages are not to be disclosed to the
jury. See 42 U.S.C. § 1981a(c).

Plaintiff next argues that any damages exceeding the statutory
limitations on her Title VII claim may be assigned to various state
law claims alleged in the complaint. (Docket No. 158 at 2-3.) The
court was clear at trial, however, that plaintiff waived those
claims by failing to include any relevant legal analysis in the
proposed pretrial order. (See Docket No. 151 at 9.) Although the
pretrial order lists statutory citation of various state law
claims, it makes no attempt to provide relevant legal authority or

---

[12] This argument is one of the few appearing in the eight paragraphs
of useful material provided to the Court in plaintiff's forty-six
paragraph response.  Following the first eight paragraphs, there
appears a six page block quote from an Eighth Circuit case, thirty-
seven copied and pasted online case summaries from various state
and federal jurisdictions, and a verbatim copy of an EEOC press
release, including the final sentence of the press release, which
reads "[f]urther information about the [EEOC] is available on the
agency's web site at www.eeoc.gov." (See Docket No. 158.) Plaintiff
provided no legal analysis to explain why any of this material is
useful to the Court.

factual support for those claims.  (See Docket No. 119.)  Federal
Rule of Civil Procedure 16(d) states that the pretrial order
"controls the course of the action."   The purpose of pretrial
proceedings and orders is to "limit[] the trial to those issues
that are actually in dispute without impairing the basic rights of
the litigants."  6A Charles Alan Wright, Arthur Miller, & Mary Kay
Kane, Federal Practice and Procedure § 1527 (2d ed. 1990).
Plaintiff chose not to present issues related to state law claims
in the pretrial order, thus waiving those claims for the purposes
of trial.  See id.  Therefore, the state law claims alleged in the
complaint cannot serve as a basis for awarding damages beyond the
statutory limitations contained in 42 U.S.C. § 1981a(3).

Plaintiff's final argument contests the number of employees
attributed to Díaz-Massó by pointing to the testimony of Francisco
Díaz-Massó that Díaz-Massó eventually grew to 250 to 300 employees.
(Docket No. 158 at 3-4.)[13]  This testimony does not place that
number of employees in any specific time frame, and is not

---

[13] Plaintiff also states that "upon information and belief,
[defendant has] recently merged its operations with Bermúdez &
Longo, and are now doing business under a new legal entity,
Bermúdez, Longo, Díaz-Massó, S.E., which was formed in 2007, and
which, according to their website, has thirteen hundred (1300)
employees to date."  (Docket No. 158 at 3.)  Other than providing
the web address for the alleged new legal entity, plaintiff
provides no other evidence that such a merger took place, that
defendant has ceased to exist, or that the alleged new legal entity
has taken on the legal obligations of defendant, Empresas Diaz-
Masso.  Without further evidence, the Court cannot impose liability
beyond the statutory limitations of 42 U.S.C. 1981a(b)(3)

Civil No. 06-2018 (FAB)                                                      46

inconsistent   with   the   affidavit   submitted   by   defendant.
Defendant's affidavit reflects that Díaz-Massó did grow to over 250
employees over the course of its existence, but then shrank to 98
and then 25 employees in the time period relevant for determining
the statutory damages cap pursuant to 42 U.S.C. § 1981a(b)(3).
(See Docket No. 143-2.)   Given that plaintiff has submitted no
conflicting evidence regarding the relevant time period, the Court
finds that the Díaz-Massó had no less than 25 employees and no more
than 98 employees for the purposes of 42 U.S.C. § 1981a(b)(3).
Accordingly, the damages awarded by the jury are hereby capped and
reduced to $50,000.

**V.    Conclusion**

For the foregoing reasons, the Court **DENIES WITH PREJUDICE**
defendant's motions pursuant to Rule 50 and Rule 59(a), **(Docket No.
153).**  The Court **GRANTS** defendant's motion pursuant to Rule 59(e)
**(Docket  Nos.  142  and  143)** and  hereby  **REDUCES**  plaintiff's
compensatory damages award from $300,000.00 to $50,000.00.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, March 30, 2010.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE
